**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELAINE WANG, Plaintiff, | Civil Action No. 22-cv-2513 |
| v. | **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| TEGNA INC., HOWARD D. ELIAS, DAVID T. LOUGEE, GINA L. BIANCHINI, STUART J. EPSTEIN, LIDIA FONSECA, KAREN H. GRIMES, SCOTT K. MCCUNE, HENRY W. MCGEE, SUSAN NESS, BRUCE P. NOLOP, NEAL SHAPIRO, and MELINDA C. WITMER, Defendants. | **JURY TRIAL DEMANDED** |

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against TEGNA Inc. ("TEGNA or the "Company") and the members TEGNA's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of TEGNA by affiliates of Standard General L.P. ("Standard General").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 25, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Teton Merger Corp. ("Merger Sub"), a wholly-owned subsidiary of Teton Parent Corp. ("Parent"), will merge with and into TEGNA with TEGNA surviving as an indirect wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 22, 2022 (the "Merger Agreement"), each TEGNA stockholder will receive $24.00 in cash (the "Merger Consideration") for each TEGNA share owned. Parent and Merger Sub are both affiliates of Standard General.

1. As discussed below, Defendants have asked TEGNA's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Greenhill & Co., LLC ("Greenhill") in support of their fairness opinions.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TEGNA's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will occur in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of TEGNA stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Howard D. Elias has served as a member of the Board since 2018 and as Chairman of the Board since April 2018.

9. Individual Defendant David T. Lougee has served as a member of the Board since June 2017 and is the Company's President and Chief Executive Officer.

10. Individual Defendant Gina L. Bianchini has served as a member of the Board since March 2019.

11. Individual Defendant Stuart J. Epstein has served as a member of the Board since 2018.

12. Individual Defendant Lidia Fonseca has served as a member of the Board since 2014.

13. Individual Defendant Karen H. Grimes has served as a member of the Board since 2020.

14. Individual Defendant Scott K. McCune has served as a member of the Board since 2008.

15. Individual Defendant Henry W. McGee has served as a member of the Board since 2015.

16. Individual Defendant Susan Ness has served as a member of the Board since 2011.

17. Individual Defendant Bruce P. Nolop has served as a member of the Board since 2015.

18. Individual Defendant Neil Shapiro has served as a member of the Board since 2007.

19. Individual Defendant Melinda C. Witmer has served as a member of the Board since 2017.

20. Defendant TEGNA a Delaware corporation and maintains its principal offices at 8350 Broad Street, Suite 2000, Tysons, Virginia 22102. The Company's stock trades on the New York Stock Exchange under the symbol "TGNA."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. TEGNA operates as a media company in the United States. The Company operates television stations that deliver television programming and digital content. It offers news content to consumers across various platforms, including online, mobile, and social platforms; owns and operates multicast networks under the names True Crime Network, Quest, and Twist that offer on-demand episodes of shows; and operates VAULT Studios, which provides true crime and investigative content in the form of podcasts and original television programs. The Company also provides solutions for advertisers through TEGNA Marketing Solutions (TMS). TMS delivers results for advertisers across television and digital platforms, as well as over-the-top (OTT) platforms, including Premion OTT advertising network. As of February 28, 2022, it operated 64 television stations in 51 markets. The Company was formerly known as Gannett Co., Inc. and changed its name to TEGNA Inc. in June 2015. TEGNA was founded in 1906 and is headquartered in Tysons, Virginia.

24. On February 22, 2022, the Company and Standard General jointly announced the Proposed Transaction:

> Tysons, Va. and New York – TEGNA Inc. (NYSE: TGNA) and Standard General L.P. today announced that TEGNA and an affiliate of Standard General have entered into a definitive agreement under which TEGNA will be acquired by the Standard General affiliate for $24.00 per share in cash. The transaction has an equity value of approximately $5.4 billion and an enterprise value of approximately $8.6 billion, including the assumption of debt.
>
> The transaction consideration represents a premium of approximately 39% to TEGNA's unaffected closing share price on September 14, 2021, the last full trading day prior to media speculation about a potential sale of TEGNA, and a premium of approximately 11% to TEGNA's all-time high closing price since

separation from the Gannett publishing business in 2015. The transaction was unanimously approved by the TEGNA Board.

Howard D. Elias, Chairman of the TEGNA Board, said, “We are pleased to have reached this agreement with Standard General, which follows a thorough review of acquisition proposals received by the Company. After evaluating this opportunity against TEGNA’s standalone prospects and other strategic alternatives, our Board concluded that this transaction maximizes value for TEGNA shareholders. Thanks to the team’s stellar execution of the Company’s value-creation strategy, TEGNA has positioned itself as a leading broadcast television group serving the greater good of the communities in which we operate – and as a private company will have an enhanced ability to keep evolving its local news, programming, and marketing solutions to serve its communities in a rapidly changing media landscape.”

Soo Kim, Founding Partner of Standard General, commented, “As long-term investors in the television broadcasting industry, we have a deep admiration for TEGNA and the stations it operates and, in particular, for TEGNA’s talented employees and their commitment to serving their communities. We are excited to partner again with Deb McDermott, who previously spearheaded the broadcast group at Media General, where Standard General was a principal shareholder. We believe TEGNA has a strong foundation and exciting prospects for continued growth as a result of the stewardship of the Board and the current management team. We look forward to building on the Company’s strong foundation and leveraging Deb’s deep industry experience to drive further growth.”

Following the close of the transaction, Deb McDermott will become CEO and Mr. Kim will serve as Chairman of a new Board. Ms. McDermott currently serves as CEO of Standard Media and has more than 20 years of experience leading broadcast groups, including previously serving as COO of Media General and as CEO and President of Young Broadcasting. In these roles, she has served as a key member of the leadership teams responsible for the successful acquisition, integration, and operation of more than 90 stations.

Dave Lougee, President and CEO of TEGNA, said, “This transaction is the next step in TEGNA’s evolution and recognizes the value of our portfolio of leading broadcast assets and innovative digital brands. TEGNA’s employees deserve tremendous credit for their commitment to serving our viewers with high-quality news and content that informs and supports our local communities. At all

levels, we have been tireless in our efforts to ensure TEGNA effectively serves all of our stakeholders, and I am immensely proud of these efforts. Our hard work has built a company that is a leading and trusted local news and media content provider in the markets it serves and has fostered a culture of diversity and inclusiveness. We are deeply gratified that TEGNA's new owners value and embrace our purpose to serve the greater good of our communities. Deb McDermott is an experienced and accomplished broadcast executive, and we are confident in TEGNA's future under her leadership."

Ms. McDermott commented, "I am honored to lead TEGNA's team to create new opportunities and build on its heritage and successes achieved under Dave's leadership. TEGNA's stations have earned excellent reputations as leading local content providers, and TEGNA's digital and content assets are a key part of its future in an evolving media landscape. These achievements are a credit to the hard work of TEGNA's dedicated employees, who are the Company's most valuable asset. I'm very excited about what the future holds for TEGNA."

**Transaction Details**

The transaction is subject to approval by TEGNA shareholders, regulatory approvals, and other customary closing conditions, and is expected to close in the second half of 2022.

Under the terms of the definitive merger agreement, in addition to receiving $24.00 per share, TEGNA shareholders will receive additional cash consideration in the form of a "ticking fee" of $0.00167 per share per day (or $0.05 per month) if the closing occurs between the 9- and 12-month anniversary of signing, increasing to $0.0025 per share per day (or $0.075 per month) if the closing occurs between the 12- and 13-month anniversary of signing, $0.00333 per share per day (or $0.10 per month) if the closing occurs between the 13- and 14-month anniversary of signing, and $0.00417 per share per day (or $0.125 per month) if the closing occurs between the 14- and 15-month anniversary of signing.

Following the close of the transaction, TEGNA stations in Austin (KVUE), Dallas (WFAA and KMPX) and Houston (KHOU and KTBU) are expected to be acquired by Cox Media Group ("CMG") from Standard General.

> Also after closing, Premion is expected to operate as a standalone business majority owned by Cox Media Group and Standard General.
>
> Upon completion of the transaction, TEGNA will become a private company and its shares will no longer be traded on the New York Stock Exchange.
>
> **Financing**
>
> An affiliate of Standard General will hold substantially all of the voting, common equity in the new entity that is acquiring TEGNA, with CMG and funds managed by affiliates of Apollo Global Management to hold securities in the new entity that will be non-voting and non-attributable and with other investors holding non-voting interests. A syndicate of banks led by RBC Capital Markets will provide debt financing.
>
> **Advisors**
>
> J.P. Morgan Securities LLC is acting as lead financial advisor, with Greenhill & Co. also acting as a financial advisor to TEGNA, and Wachtell Lipton Rosen & Katz and Covington & Burling LLP are acting as its legal advisors. Moelis & Company and RBC are acting as financial advisor to Standard General and Fried Frank Harris Shriver & Jacobson LLP and Pillsbury Winthrop Shaw Pittman LLP are acting as its legal advisors.

* * *

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that TEGNA's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. The Materially Incomplete and Misleading Proxy Statement**

26. On March 25, 2022, TEGNA filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by TEGNA management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors (and sometimes calculated by the Financial Advisors) with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that the Proxy provided. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Unlevered Free Cash Flow, and Levered Cash Flow, but fails to provide line items used to calculate the metrics

and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the individual financial metrics and multiples for the companies observed by J.P. Morgan in the analysis.

33. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics and multiples for the transactions observed by J.P. Morgan in the analysis.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of TEGNA; (ii) line items used to calculate the Company's projected free cash flows; (iii) the inputs and assumptions underlying the use of a range of terminal growth rates ranging from (2.5%) to (1.5%); (iv) the inputs and assumptions underlying the use of the range of discount rates of 7.00% to 8.00%; (v) net debt, redeemable noncontrolling interests, unfunded pension liability, and equity investments of the Company; and (vi) the number of fully diluted shares of the Company.

35. With respect to Greenhill's *Peer Trading Multiples* analysis, the Proxy Statement fails to disclose the individual metrics of each comparable company selected for the analysis.

36. With respect to Greenhill's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the individual metrics of each comparable company selected for the analysis.

37. With respect to Greenhill's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of TEGNA; (ii) line items used to calculate the Company's projected free cash flows; (iii) the inputs and assumptions underlying the use of a range of exit multiples of 7.0x to 8.0x (iv) the inputs and assumptions underlying the use of the range of

discount rates of 8.00% to 9.00%; (v) net debt, redeemable noncontrolling interests, unfunded pension liability, and equity investments of the Company; and (vi) the number of fully diluted shares of the Company.

38. With respect to Greenhill's *Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose the inputs and assumptions underlying the use of 12.3% cost of equity.

39. With respect to Greenhill's *Precedent Premiums Paid* analysis, the Proxy Statement fails to disclose the transaction reviewed for the analysis and the premiums paid in each transaction.

40. With respect to Greenhill's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the equity research analysts observed and the price targets published by each analyst.

41. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of TEGNA within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of TEGNA, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TEGNA, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TEGNA, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 28, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*